UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

JESSICA TUCKER,                        )
                                       )
            Plaintiff,                 )      Civil Action No. 5:25-cv-172-KKC
                                       )
V.                                     )
                                       )      **OPINION AND ORDER**
ACTALENT, INC. and                     )
TOYOTA MANUFACTURING,                  )
KENTUCKY, INC.                         )
                                       )
            Defendants.                )
                        ***   ***   ***   ***

This matter is before the Court on the motion (R. 9) to compel arbitration and dismiss the complaint filed by the Defendants.

For this motion, the Court has relied on evidence, not simply the allegations in the complaint. Accordingly, the motion will be evaluated under the summary judgment standard. *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021).

On a summary judgment motion, this Court does not weigh evidence but rather views the evidence in the light most favorable to the party opposing the motion. *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022) (citation omitted). The Court has relied on "the undisputed facts and the disputed facts in the light most favorable to the plaintiffs." *Davenport v. Causey*, 521 F.3d 544, 546 (6th Cir. 2008); *RIMCO, Inc. v. Dual-Tech, Inc.*, No. 3:21-CV-313, 2022 WL 4545608, at *1, n.1 (E.D. Tenn. Sept. 28, 2022) ("As required, this Court accepts undisputed facts as true. In deciding a motion for summary judgment as to which the parties dispute any material facts, the Court must view the

disputed evidence in the light most favorable to the party responding to the motion—here, Plaintiff—and draw all reasonable inferences in that party's favor.")

Defendant Actalent, Inc. is a contract labor company that provides staffing services. Defendant Toyota Motor Manufacturing, Kentucky, Inc. is an automobile manufacturer that operates an assembly plant in Georgetown, Kentucky. Actalent hired plaintiff Jessica Tucker as a parts ordering analyst at Toyota, where she worked from March 13, 2023 until she was terminated on August 6, 2024. Actalent paid her wages, but Toyota supervised her work.

On about June 18, 2024, Tucker was approved for six weeks of leave under the Family and Medical Leave Act, 29 U.S.C.§ 2601, et seq., to care for her father. On July 23, 2024, she requested an additional six weeks of FMLA leave to continue caring for her father. On August 6, 2024, however, Actalent and Toyota fired her. She asserts two claims for violation of the FMLA and one claim for violation of the Americans with Disabilities Act, 42 U.S.C.§ 12101, et seq.

Defendants assert that all three claims must be arbitrated. There are two agreements relevant to this motion. The first is the Arbitration Agreement, which provides that, with some inapplicable exceptions, all claims that Tucker may have against Actalent or any of its clients or customers "arising out of and/or directly or indirectly related" to her employment are subject to arbitration. (R. 9-2 Arbitration Agreement 1.)

The second agreement at issue is the Employment Agreement. It provides as follows:

> Attorneys' Fees – To the extent permitted by law, you agree that in the event of any dispute or claims: (a) arising out of or relating in any way to your employment or relationship with ACTALENT; or (b) seeking to enforce the obligations contained in this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all costs relating to the dispute or

2

> claims and any process through which such a dispute or claims
> may be resolved.

(R. 90-3 Employment Agreement ¶ 21.)

Tucker does not dispute that all three of the claims she asserts are subject to the Arbitration Agreement. She asserts, however, that the Court cannot enforce the Arbitration Agreement because the provision of the Employment Agreement requiring the losing party to pay the costs of the arbitration and attorneys' fees does not allow her to effectively vindicate her rights under the FMLA and the ADA. "The Supreme Court has made clear that statutory rights . . . may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)).

If an agreement allocates the costs of arbitration in a manner that "effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement." *Morrison*, 317 F.3d at 658. Thus, if the cost allocation "would deter a substantial number of similarly situated potential litigants, [the Court] should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the federal statute." *Id*. at 663. "The issue is whether the terms of the arbitration agreement itself would deter a substantial number of similarly situated employees from bringing their claims in the arbitral forum, and thus the court must consider the decision-making process of these potential litigants." *Id*. at 664-65.

3

In determining whether the cost-allocation provision would cause such deterrence, the Court must first "define the class of such similarly situated potential litigants by job description and socioeconomic background. It should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration." *Id.* at 663.

Next, the Court must consider "the average or typical arbitration costs, because that is the kind of information that potential litigants will take into account in deciding whether to bring their claims in the arbitral forum." *Id*. at 664.

Finally, the Court must consider the costs of litigation. *Id.* The issue is whether the overall cost of arbitration is greater than the cost of litigation in court. *Id*.

In cases involving high-level employees of substantial means, the cost allocation will be enforceable. *Id*. at 665. For many, "if not most," other employees, however, the cost-allocation provisions would not be enforceable. *Id*.

Here, Tucker has presented undisputed evidence that her wages in 2023 were $84,447 and that her wages in 2024 were $45,168. (R. 13-5 W-2 Statements.) She has presented undisputed evidence that she was unemployed from August 6, 2024 to January 27, 2025, and that she currently earns a net income of $2,400 per month. Tucker states that her monthly household expenses are $5,958, of which she pays half. She has $25,000 in credit card debt. (R. 13-6 Tucker Aff.)

The Arbitration Agreement requires that the parties use Judicial Arbitration and Mediation Services ("JAMS") for the arbitration. (R. 9-2 Arbitration Agreement 1.) Tucker asserts that JAMS charges an initial fee of $3,500 to open a case with three or more parties. It also charges an administrative fee of 13 percent of the amount billed by the arbitrator. Tucker

presents undisputed evidence that the hourly rate charged by arbitrators is from $290 to $500 per hour.

In *Morrison*, the Court determined that the typical employment discrimination arbitration takes between 15 to 40 hours of an arbitrator's time. *Morrison*, 317 F.3d at 676. Thus, the arbitrator's fee here would range from $4,350 to $20,000. Litigants never pay for a decisionmaker's time in court. *Id*. at 664. "Courts charge plaintiffs initial filing fees, but they do not charge extra for in-person hearings, discovery requests, routine motions, or written decisions, costs that are all common in the world of private arbitrators." *Id*. at 669.

In *Morrison*, the court determined, "minimal research will reveal that the potential costs of arbitrating the dispute easily reach thousands, if not tens of thousands, of dollars, far exceeding the costs that a plaintiff would incur in court." *Id*. at 669. "Based on one recent study using costs and estimates provided by three major arbitration providers themselves, a plaintiff forced to arbitrate a typical $60,000 employment discrimination claim will incur costs, depending on which company is chosen to provide the arbitration, that range from three to nearly *fifty* times the basic costs of litigating in a judicial, rather than arbitral, forum." *Morrison*, 317 F.3d at 669.

In their reply brief, Defendants do not dispute that, if Tucker and similarly situated persons were potentially required to pay the costs of arbitration, that would deter a substantial number of them from attempting to vindicate their statutory rights in the arbitral forum. Defendants address only whether the attorneys' fees provision is enforceable. Accordingly, pursuant to *Morrison*, the Court must find that the cost allocation is not enforceable.

5

In *Morrison*, having determined that the cost allocation was not enforceable, the Court next looked at whether the provision could be severed from the arbitration agreement so that the rest of the agreement could be enforced. *Morrison,* 317 F.3d at 674-75. The court determined the provision could be severed and, accordingly, the parties were ordered to arbitration pursuant to the agreement. *Id.* at 680.

Here, however, the cost-allocation provision is contained in the Employment Agreement, not in the Arbitration Agreement. Thus, to resolve this motion, the Court has no need to determine whether the cost allocation can be severed from the Arbitration Agreement. Accordingly, the Court will grant the motion to compel arbitration and leave it to the arbitrator to decide if the unenforceable cost allocation can be severed from the Employment Agreement should that issue be relevant.

In addition to allocating the costs of the arbitration, the Employment Agreement also provides that the losing party is liable for the winner's attorneys' fees. The Court agrees with the Defendants that it should not determine whether this provision is enforceable. Pursuant to *Morrison*, where a plaintiff argues that a cost allocation in an arbitration agreement effectively prevents the vindication of a plaintiff's statutory rights, the issue is whether the overall cost of arbitration is greater than the cost of litigation in court such that plaintiffs would be deterred from bringing claims. *Id*. at 664.

Here, the cost allocation and the attorneys' fees provision apply to any dispute in any forum, not just to arbitration. Unlike the costs, however, Tucker has not argued or presented evidence that attorneys' fees are higher in arbitration than in court. Thus, the Court has no basis to find that the attorneys' fees provision would deter a plaintiff from bringing a claim in an arbitral forum any more than it would deter a plaintiff from bringing the claim in court. The

attorneys' fees provision may well be contrary to law and unenforceable. The arbitrator can decide that. Because there is no evidence that attorneys' fees are higher in arbitration than in court, the enforceability of this provision is not relevant to whether the plaintiff should be compelled to arbitrate.

The remaining issue is whether the Court should stay this action pending the completion of the arbitration or dismiss it. In her response brief, Tucker requests that the Court stay this action. As both parties agree, the Court must grant that request pursuant to *Smith v. Sprizziri*, 601 U.S. 472, 478-79 (2024).

For all these reasons, the Court hereby ORDERS as follows:

1) Defendants' motion to compel arbitration (R. 9) is GRANTED;

2) Tucker MUST SUBMIT her claims to arbitration pursuant to the Arbitration Agreement;

3) The following language in the Employment Agreement SHALL NOT BE ENFORCED as to the statutory claims asserted in this action:

   you agree that in the event of any dispute or claims: (a) arising out of or relating in any way to your employment or relationship with ACTALENT; or (b) seeking to enforce the obligations contained in this Agreement, the prevailing party shall be entitled to recover . . . all costs relating to the dispute or claims and any process through which such a dispute or claims may be resolved.

   (R. 90-3 Employment Agreement ¶ 21.)

4) Defendant's motion to dismiss (R. 9) is DENIED;

5) Tucker's motion to stay this action (R. 13) pending the completion of the arbitration is GRANTED;

6) This action is STAYED until the completion of the arbitration; and

7) Tucker SHALL FILE a notice with the Court within 14 days of the completion of the arbitration.

This 17th day of March, 2026.

Signed By:

*Karen K. Caldwell* KKC

United States District Judge